BARGER et al. v. BRUBAKER et al.*
(No. 7176.)

(Court of Civil Appeals of Texas. Galveston. May 9, 1916. On Motion for Rehearing, June 29, 1916.)

1. BILLS AND NOTES ☞254, 408—LIABILITY OF INDORSER—HOW FIXED.

An indorser's liability on a note may be fixed by protest or by bringing suit at the first term of court to which the suit can be brought after the note becomes due or by suit at the second term of court after it becomes due, and showing why suit was not instituted at the first term.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 575–580, 1019–1021, 1113–1128; Dec. Dig. ☞254, 408.]

2. BILLS AND NOTES ☞254, 408 — LIABILITY OF INDORSER—RELEASE.

If no such liability is so fixed, the indorser is released.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 575–580, 1019–1021, 1113–1128; Dec. Dig. ☞254, 408.]

3. VENDOR AND PURCHASER ☞278—VENDOR'S LIENS—STATUTE.

Vernon's Sayles' Ann. Civ. St. 1914, art. 5695, providing that when the time of payment of vendor's lien notes is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance, by the party obligated to pay such notes, and filed for record, etc., the lien shall be in force until four years after the maturity provided in such extension, and the date of maturity set forth in the deed of conveyance or the recorded extension of the same shall be conclusive as to the date of maturity, is a statute of limitations for the protection of those who may deal with lands, against undisclosed liens against them.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 776, 777; Dec. Dig. ☞278.]

4. EVIDENCE ☞445(4) — LIABILITY OF INDORSERS—STATUTE.

Notwithstanding such statute, a verbal extension of a note by the indorser while it was in his hands may be shown by the indorsee in proving his promptness in bringing suit.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2055–2057; Dec. Dig. ☞445(4).]

5. BILLS AND NOTES ☞254—LIABILITY OF INDORSER—WAIVER OF PROMPT SUIT TO FIX LIABILITY.

An indorser, requesting an indorsee to give the maker of notes further time, waived the bringing of any suit to fix his liability as indorser until after he notified indorsee that he denied liability as indorser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 575–580; Dec. Dig. ☞254.]

6. BILLS AND NOTES ☞404(1)—FIXING LIABILITY OF INDORSER—SUIT WITHIN REASONABLE TIME.

Instruments indorsed and transferred after maturity, being in legal effect payable on demand, must be presented within a reasonable time to charge an indorser, the holder not being strictly bound by Vernon's Sayles' Ann. Civ. St. 1914, art. 579, providing for suit at the first term of court, etc., after the maturity of the instrument, so as to fix the liability of the indorser, since the note may pass to the holder long after its maturity date and after one term of court after maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1091–1094, 1099, 1101–1103; Dec. Dig. ☞404(1).]

7. BILLS AND NOTES ☞254, 422(1)—LIABILITY OF INDORSER — WAIVER OF BRINGING PROMPT SUIT.

Where the indorser by unequivocal words or acts misleads the holder, and induces him to dispense with notice, suit, etc., required by law to fix liability of an indorser, he may be regarded as having waived his right under the law to have the note protested, suit brought, etc.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 575–580, 1196–1199, 1203–1208; Dec. Dig. ☞254, 422(1).]

8. BILLS AND NOTES ☞452(1)—PAROL EVIDENCE—VARYING TERMS OF NOTE INDORSEMENT—EXTENT OF LIABILITY.

An indorser cannot escape liability by showing that he had an understanding that his indorsement was to be without recourse on him, that he was ignorant of the legal effect of signing his name on the back of the note, and that he was told that signing his name was only a formal matter necessary to transfer.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1352; Dec. Dig. ☞452(1).]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by Edward H. Bailey against W. L. Brubaker and others. From the judgment plaintiff and defendant A. G. Barger appeal. Appeal of plaintiff dismissed on his motion, and judgment affirmed as to appellant Barger.

McDonald & Wayman and C. G. Dibrell, all of Galveston, for appellants. Edw. H. Bailey, of Houston, for appellees.

LANE, J. For the purpose of this opinion the following statement is deemed sufficient:

On the 7th day of August, 1911, A. G. Barger conveyed to W. L. Brubaker 22 acres of land situated near League City, in Galveston county. In part consideration for said land Brubaker executed and delivered to Barger his two promissory notes for $1,000 each, numbered 2 and 3, respectively, due and payable to Barger on the 7th day of August, 1913 and 1914, respectively, bearing 10 per cent. interest per annum until paid. The date of payment of note No. 2 was thereafter extended by Barger to August 7, 1914, thus making both of said notes due August 7, 1914. Three hundred forty-eight dollars was paid by Brubaker to Barger on the principal of note No. 2, and also all the interest due on both of said notes up to August 7, 1913, was paid.

On the 6th day of November, 1914, Barger transferred and delivered both of said notes to the Raywood Canal & Milling Company of Houston, and indorsed both of them in blank by writing his name on the back of each of them. On the 10th day of November, 1914, the Raywood Canal & Milling Company transferred and delivered said notes to Edward H. Bailey, without indorsement.

Edward H. Bailey brought this suit on the 16th day of March, 1915, against W. L. Brubaker, as maker, and A. G. Barger, original payee, and the Raywood Canal & Milling Company as indorsers, to recover the principal, interest, and attorney's fees due upon said notes, and for a foreclosure of his lien upon the said 22 acres of land, which was retained by Barger to secure the payment of said notes, when he conveyed said land to Brubaker.

Among other things, plaintiff Bailey alleged the insolvency of Brubaker, the maker of the notes, at all times since Barger transferred and indorsed the same, and that defendant Barger did, at the time he transferred said notes, and at various and sundry times since, up to January 12, 1916, beseech and importune the transferees of said notes not to sue on said notes, but to give defendant Brubaker more time.

The Raywood Canal & Milling Company answered specially, denying that it had indorsed either of said notes, or that it was in any way liable to Bailey for their payment.

A. G. Barger, the original payee of said notes, admitted that he had signed his name on the back of said notes at the time he transferred and delivered them to said Canal & Milling Company, but says that he was ignorant of the effect of said act in so signing his name on said notes; that it was understood and agreed at the time he so signed that his transfer was to be without recourse on him, etc. He also sets up as a defense that both of said notes became and were due and payable on the 7th day of August, 1914, and that if it be held that he is an indorser of said notes, then he says that said Bailey, the transferee and holder of said notes, did not protest the same, nor did he bring suit on them at the first term of the court having jurisdiction of such suit, after the maturity thereof, nor did he bring suit thereon at the second term of said court and show good cause for not bringing said suit at said first term of court, and therefore he, Barger, is released as such indorser.

W. L. Brubaker, maker of the notes, answered by general denial.

Plaintiff Bailey, by supplemental petition, in reply to the answer of defendant Barger, demurred to so much of said answer as alleged that it was understood and agreed between Barger, and those to whom said notes were first transferred and indorsed, that his indorsement was to be without recourse, and he further specially alleged that, on or about the 1st day of August, 1914, A. G. Barger, the original payee, while still the owner and holder of said notes, entered into a verbal agreement and contract with W. L. Brubaker, the maker of said notes, to extend the time of payment of the interest due thereon to January 1, 1915, with the further agreement that if said interest was then paid he would extend the time of payment of the principal of said notes to August 7, 1915, and therefore said notes were not due until Brubaker had made default in the payment of said interest on the 1st day of January, 1915. He further says that if Barger did not in fact make such extension, he, Barger, told those to whom he transferred said notes, at the time said notes were so transferred and indorsed, that he had made such extension, and that he, Bailey, was in turn told by said transferee that such extension was made at the time he purchased said notes, and that he believed and relied on said statement and information, and that on the 5th day of January, 1915, he received a letter from said Barger, in which he told him Bailey, that such was in fact made, and that, so believing and relying he did not bring suit on said notes earlier than he did, and that such statement in said letter was a ratification by Barger of what he had been told by those from whom he purchased said notes, and that said Barger is now estopped to deny that such extension was in fact made.

The case was tried before a jury. After all parties had closed their evidence the court instructed the jury to return a verdict in favor of plaintiff E. H. Bailey against W. L. Brubaker and A. G. Barger for the sum of $2,045.18, and against all the defendants for a foreclosure of the lien on said 22 acres of land, described in plaintiff's petition, and in favor of the Raywood Canal & Milling Company as to liability upon the notes sued upon. The verdict of the jury was in accordance with said instructions, and a judgment was rendered accordingly. From so much of the judgment as refused plaintiff Bailey a recovery against the Raywood Canal & Milling Company he has appealed, and from so much of said judgment as was against A. G. Barger he has appealed.

Since the record has reached this court on appeal E. H. Bailey has filed a motion, joined in by the Raywood Canal & Milling Company, praying that his appeal from that part of the judgment of the trial court in favor of the Raywood Canal & Milling Company be dismissed at his costs, which said motion is here now granted, and plaintiff's said appeal is here dismissed.

Appellant Barger insists by his first and second assignment of error that the court erred in overruling his demurrer to so much of appellee's petition as alleged that he, Barger, had orally extended the time of payment of said notes, because it affirmatively appears that said notes are secured by a vendor's lien on land, and that it is provided by article 5695, Vernon's Sayles' Civil Statutes, that when the time of payment of vendor's lien notes is extended, such extension must be by written contract, signed and acknowledged, as provided for in the law relating to the execution of deeds of conveyance, by the party obligated to pay such notes, and filed for record, etc., and unless such provisions are complied with, the dates

of maturity of such notes as set forth in the deed of conveyance shall, in all actions on such notes, be conclusive evidence of the dates of maturity of the same.

[1, 2] In this state the liability of an indorser on any promissory note may be fixed by protest, or by bringing suit on such note, at the first term of the court to which such suit can be brought, after the note becomes due, or by instituting suit thereon at the second term of said court after said note becomes due and showing why such suit was not instituted at said first term. If no such liability is so fixed the indorser is released. It would therefore ordinarily become an important inquiry to the parties as to whether the note sued on was in fact past due at the time of the institution of the suit. Appellee Bailey pleaded that appellant Barger had verbally extended the time of payment of said notes, in any event, to January 1, 1915, and therefore said notes were not due until that date, and that after that date, and before any court having jurisdiction of the subject-matter had convened, Barger had requested him to refrain from suit and to give Brubaker, the maker, more time, thus attempting to show good cause why he had not sued at the first term of said court after said notes became due. The court at which suit might have been brought upon said notes, if no extension was made, and before it was brought on March 16, 1915, convened on the first Monday of October and December, 1914, and the first Monday in February, 1915. Barger owned and held said notes until he transferred them on the 5th day of November, 1914.

[3, 4] Appellant's contention is that it was not admissible to show that any verbal extension of the time of payment of said notes had been made, even if true, because article 5695, Vernon's Sayles' Civil Statutes, in substance, provided that the date of payment of notes secured by lien upon land can only be shown by the date of maturity, as shown on the face of the note, or by a contract of extension in writing, properly signed, acknowledged, recorded, etc., and therefore appellant's said demurrers should have been sustained. We think it was the intention of the Legislature, in enacting said article 5695, to enable those who may deal with lands in this state to determine from the date, as shown on the face of the original instrument, then under consideration, the due date of a written obligation secured by a lien on land, or to so determine from some written contract entered into between the maker and holder of such obligation, by which said due date had been extended, properly signed, acknowledged, and recorded in the deed records of the county in which said land is situated, and to provide a reliable means by which one dealing with such land may legally presume that the due date shown by such written instrument last recorded is the true date of such obligation. Such statute is a statute of limitation for the protection of those who may deal with lands in this state against undisclosed liens against the same. Such statute has no application to, nor in any manner affects, the fixing of liability of an indorser of a note or other written obligation, the latter being the question presented in the present case. We do not think the trial court erred in overruling appellant's demurrers; therefore assignments 1 and 2 are overruled.

By appellant's third and fourth assignments he insists that the trial court erred in instructing the jury to return a verdict against him in favor of appellee, because the evidence adduced upon the trial raised issues of fact which should have been submitted to the jury for its determination, as follows:

First. As to whether there was a contract of extension of the notes sued on as alleged by the plaintiff.

Second. As to whether appellant, by reason of his conduct and his statements made in the letters written by him to appellee, has estopped himself from showing that there was in fact no valid agreement made by him to extend the time of payment of said notes, as alleged by the plaintiff.

Third. As to whether or not appellee Bailey was induced by said letters or other acts and conduct of appellant to delay the bringing suit on said notes at the first term of the proper court after he, Bailey, became the owner and holder thereof, or to bring suit at the second term of said court after becoming such owner and holder.

Fourth. As to whether Bailey brought his suit on said notes at the first term after he had been informed by appellant that he repudiated his liability as indorser of said notes.

Fifth. As to whether or not the letters written by appellant to Bailey, together with other acts and conduct of appellant, induced plaintiff, Bailey, to delay the bringing of his suit until after the convening of the February term of court in 1915.

We shall not undertake to discuss and dispose of the several subdivisions of assignments 3 and 4, but will, in a general discussion, dispose of the main proposition therein presented, to wit: Did the court err in instructing a verdict in favor of appellee Bailey against appellant Barger?

The undisputed evidence shows that W. L. Brubaker executed and delivered the notes sued on to A. G. Barger; that one G. N. Tegnell owned a certain tract of land near Raywood, in Liberty county, which one J. W. Jump, a subagent of Elmen Land Company, was endeavoring to sell to A. G. Barger. Later this land was sold to Barger through the Elmen Land Company, Tegnell taking in part consideration for the purchase price of said land the two notes in question, which were transferred and delivered to Elmen Land

Company for Tegnell by Barger, and at the time they were so delivered, A. G. Barger indorsed them in blank by writing his name on the back of them; that said notes were thereafter transferred and delivered by Tegnell, or some one acting for him, to the Raywood Canal & Milling Company, for the purpose of having said company release some interest it had in the land sold to Barger, and Barger executed a written transfer of said notes to said company as if said notes were transferred directly by him to said company; that appellee Bailey had nothing whatever to do with said foregoing transactions; that in about 6 or 8 days, to wit, November 10, 1914, after said notes were transferred to said Raywood Canal & Milling Company, said company sold and delivered the same to appellee Bailey; that when said notes were sold to Bailey he was told by Mr. Tegnell, a member of the Elmen Land Company, who negotiated the sale, that the time of payment of the notes was extended. He was sent by Tegnell to J. W. Jump at League City, who was to show him the land sold by Barger to Brubaker, and for which said notes were given in part payment. Jump, as the agent of Tegnell, told Bailey before he bought the notes that Barger had told him, Jump, that he, Barger, had extended the date of payment of the interest due on the notes to January, 1, 1915, and had extended the principal to August 7, 1915; that Tegnell, who sold the notes to Bailey, did not tell him that the Raywood Canal & Milling Company owned or had anything to do with the notes, nor did Bailey have any knowledge of such fact until the deal was closed. On the 2d day of January, 1915, after Bailey bought the notes and they had been transferred to him, he wrote appellant A. G. Barger the following letter:

"Houston, Texas, January 2, 1915.
"Mr. A. G. Barger, League City, Texas—Dear Sir: Some time ago I purchased from Raywood Canal & Milling Company the remaining notes, two and three, executed by Wm. L. Brubaker to you, the balance of the principal due thereon amounting to $1,615.49, and at once wrote Mr. Brubaker that I had purchased these notes and that according to his agreement with you the interest would be due, amounting to $186.10, on January 1, 1915. Mr. Brubaker has never replied to my letter, and to-day I wrote him that unless this interest is paid at once I will declare the notes due and sue and foreclose the vendor's lien against the property. As you are liable on these notes and will have to pay any balance which the property may not bring at forced sale, I thought you might wish to take the matter up with Brubaker and see if he intends to pay the interest. I was told when I purchased these notes that you had agreed with him to extend the time of the payment of interest to January 1, 1915, and the time of payment of the principal to August 7, 1915. I would be obliged if you would write me whether this is correct or not. Unless this interest is settled at once I will be compelled to file suit against Mr. Brubaker and yourself. Hoping to hear from you by return mail, I remain,
"Yours very truly,      Edward H. Bailey."

To this letter Barger replied as follows:
"League City, Tex. 1—5—15.
"Mr. Edward H. Bailey. Houston, Texas—Dear Sir: I rec. your letter this A. M. The statements you make in regard to W. L. Brubaker notes are O. K. and I am writing him in regard to same. If I don't hear from him I am going to Galveston next Monday & will do all I can to get him to do what is right. He is unfortunate in being deaf & it is hard to get him to realize what he is up against, however I think I can make it clear to him. Thanking you for your kindness, I am,      A. G. Barger."

On the 12th day of January, 1915, Barger wrote Bailey the following letter:
"League City, Tex. 1—12—15.
"Mr. Edward H. Bailey—Dear Sir: I went to Galveston yesterday, & I seen Mr. Brubaker and explained the business to him as best I could. He tells me that he has an appointment with a man Wednesday that he thinks he will be able to close a deal right away, & he is willing to sacrifice all of his interest to satisfy those notes. I wish you could be easy a little longer & he will do all he can to meet it. I am personally acquainted with the man he is dealing with & he is well fixed financially. I am going down again tomorrow & will see them again & let you know.
"Very truly,      A. G. Barger."

On the 20th or 21st day of January, 1915, Bailey received a letter from Barger in which he denied any liability as indorser, saying that he had not given Brubaker any extension of the date of payment of either the principal or interest due on the notes, and insisted that as no suit had been brought on said notes he, Barger, was no longer liable as indorser. On the 27th day of January, 1915, Barger wrote Bailey as follows:

"League City, Texas 1—27—15.
"Mr. Edward Bailey, Houston, Texas—Dear Sir: Received your letter yesterday & wrote Mr. Brubaker in regard to it and asked him to let us know at once what progress he is making with his sale. We will likely hear from him in a day or so, could be very glad if he can make the deal.      Very truly, A. G. Barger."

The first term of the court, after the letters of January 12, 1915, and January 21, 1915, were written, convened on the first Monday in February, 1915, 11 days after Bailey was notified by Barger that he denied liability as indorser. Bailey lived at Houston, Barger at League City, and Brubaker at Galveston. Bailey filed his suit upon the notes on the 16th day of March, 1915.

Appellant Barger testified that he had agreed with Brubaker to extend the time of payment of the interest due on said notes to Christmas, 1914, and that if such interest was then paid he would extend the principal to August 7, 1915; provided he, Barger, continued to own the notes.

J. H. Ross, a witness for appellant Barger, a lawyer of League City, testified that he heard the agreement with reference to extension of notes and interest thereon, made between Barger and Brubaker, and that said agreement was that as stated by Barger.

C. A. Elmen, of the firm of Elmen Land Company, who was the active agent in the purchase of the notes from Barger, testified

that before and at the time Barger transferred the notes, he, Barger, said to him, Elmen—

"that he sure did not want us (meaning Elmen Land Company) to take advantage of Brubaker, but wanted us to grant him the extension he had already given."

J. W. Jump, who was active in an effort to have Barger transfer said notes, testified that Barger went to Houston to talk about his trade with Elmen Land Company three times; that he hesitated about making the transfer of the notes to Elmen Land Company for Tegnell, and said to him that they might transfer the notes to some one else and that he, Barger, did not want any advantage taken of the old man (Brubaker); that he had promised the old man to give him an extension, and that he wanted him to have it, and had Elmen to agree to give the old man more time before he would agree to make the transfer; that he told Bailey what Barger had said before Bailey purchased the notes.

The testimony of Elmen and Jump, as above stated, stands undisputed, except that appellant Barger says he qualified the alleged extension with the condition "that if he continued to own the notes to the time stated, he would grant the extension."

If it be conceded that, to support the judgment rendered, it was necessary that the evidence conclusively show that the extension of the time of payment of the notes and interest due thereon, as alleged by appellee Bailey, was in fact made, we would hold that the trial court committed reversible error in not submitting that question to the jury for its determination, as there was sufficient evidence to require the submission of such question, unless the same became immaterial and unimportant by reason of other facts shown by the undisputed evidence to exist. However, if it be conceded that no such extension as alleged by appellee Bailey was given, and that said notes were past due at the time appellant Barger transferred them, and at the time Bailey became the owner, and that Bailey did not fix the liability of the indorser (Barger) by protest or proper suit, nevertheless it is, we think, conclusively shown that appellant Barger, the indorser, was the owner of said notes from the 7th day of August, 1914, the date on which he insists they became due, that before he transferred and indorsed said past-due notes, the October term of the court at which suit might have been brought on the notes had convened, and no suit had been brought on said notes; that appellant transferred said notes to Elmen Land Company, for the benefit of Tegnell, on or about the 5th day of November, 1914, and that at the time of said transfer and indorsement, he, Barger, requested the transferee to give the maker of the notes further time in which to pay same; that when the notes were transferred to appellee Bailey, he was told by Elmen and Jump of such request;

that on January 2, 1915, appellee Bailey wrote to appellant that he had been so told, and on the 5th day of January, 1915, appellant, in reply to Bailey's letter, wrote him that the information given him was correct; that on the 12th day of January, 1915, appellant Barger wrote to appellee Bailey, asking him to give the maker of the notes further time; that not until January 21, 1915, did Barger ever insist that he could not be held as indorser because his liability had not been fixed as provided by law; that after Bailey was so informed he had only one day to prepare and file his suit so as to get service at the February term of court, and that it was impossible for him to bring his suit and get service on all the defendants so as to take judgment at said term of court, and that appellee did bring his suit at the next term thereafter.

From the facts stated we conclude:

First. That as appellant was the owner of the notes in question long after they became due, and although he had an opportunity to do so, he had brought no suit to collect the sum due on the notes, the transferee of the same was not required to exercise that degree of diligence in fixing the liability of the indorser which he would have been required to exercise if said notes had been transferred to him before maturity, but should be required to exercise such reasonable diligence only as was apparently necessary, under all the facts and circumstances of the case, to protect the indorser from loss by delay in bringing suit, and that appellee did exercise such diligence.

Second. That appellee Bailey did show good cause why he did not bring his suit at the December term, 1914, or at the February term, 1915, of said court.

[5] Third. That appellant, by his request to appellee Bailey and others to give the maker of said notes further time, waived the bringing of any suit to fix his liability as indorser until after he notified appellant that he denied his liability as such indorser, and therefore the court did not err in instructing a verdict against appellant as indorser. Holliman v. Karger, 30 Tex. Civ. App. 558, 71 S. W. 299; Chadwick & Co. v. Jeffers, 1 Rich. Law (S. C.) 397, 44 Am. Dec. 260; Wickersham v. Altom, 77 Ill. 620; Brown v. Robbins, 1 Ind. 82; Lowther v. Share, 44 Ind. 390; Free v. Kierstead, 16 Ind. 91.

We are so forcibly impressed with the reasoning of the court in the case of Chadwick & Co. v. Jeffers, supra, as applicable to the propositions under discussion, we have adopted the same in this case, as follows:

"The distinction between the case of a note indorsed after it is due, and of one indorsed before it is due, with respect to the diligence required in making demand and giving notice, is very obvious. When a note is indorsed after it is due, no time for payment is prescribed. The reasonable expectation of the holder that it will be paid when due has been already disappointed, and he has had the opportunity of

using such extraordinary diligence as might be necessary, if it could avail to protect himself against the failure of the maker to pay. The note has lost credit before the holder parts with it, and is unaccompanied by any engagement of the maker, respecting the time of payment, so that punctuality is out of the question. But a note indorsed before it is due, unless payable on demand, has a prescribed time for payment, at which it is the duty of the indorsee to demand, and of the maker to pay, the sum stipulated. The indorser may reasonably expect that it will be promptly paid when due, and may require the indorsee to demand payment at that time, and not subject him to the risk of loss that might follow on delay. If not paid when due, the indorser may also require the earliest reasonable notice of the failure of the maker. If the indorsee neglects to demand payment at the proper time, and to give notice to the indorser of nonpayment, be may justly resist liability for the loss when the indorsee has neglected to do what was important to his security.

"All the rules of diligence applicable to negotiable instruments are designed for the security of the parties secondarily liable, and when demand or notice is not necessary for their protection, it is dispensed with. * * * The same principle would dispense with notice of nonpayment to the indorser of a note past due. To visit on the indorsee in such case, a loss which may be presumed to arise from want of punctuality in making demand and giving notice of nonpayment of a note not payable at any specified time, and as to which the debtor had made default, while the note was in the hands of the indorser, on the presumption of an injury to the indorser, by depriving him of the advantage of taking prompt measures for recovery against the maker, which, while the note was in his possession, he had wholly neglected to pursue or had pursued ineffectually, would be, on a presumption against the fact, to substitute the indorsee to a loss justly chargeable to the indorser.

"The earlier decisions in our courts have not been very consistent, but the more recent cases have maintained that the rules of diligence respecting demand and refusal which are applicable to negotiable instruments transferred before they are due do not apply to transfers after they are due. Though demand and notice are not dispensed with, yet the duty of the holder, in these particulars, is limited to the use of such diligence, according to the circumstances of the case, that the indorser suffer no injury through his remissness or neglect."

[6] Instruments indorsed and transferred after maturity, being in legal effect payable on demand, must be presented within a reasonable time. Under such circumstances the holder cannot be strictly bound by the provisions of article 579, Vernon's Sayles' Statutes, which provide for suit at the first term of the court, etc., after the maturity of the instrument, so as to fix the liability of the indorser, for the reason that the note may pass, and in this case it did pass, to the holder long after its date of maturity and after one term of the court had passed, after such maturity.

[7] Where the indorser by unequivocal words or acts misleads the holder, and induces him to dispense with notice, suit, etc., required by law to fix liability of an indorser, he may be regarded as having waived his right under the law to have the note protested, suit brought, etc. Ruling Case Law, § 409, pp. 1187, 1188. In Lowther v. Share, supra, the court said:

"All the questions raised in the case resolve themselves into the question whether, under the circumstances, the appellant is liable to the appellee on the indorsement. We think, assuming that the delay to prosecute the maker was at the instance of the defendant, * * * the defendant is clearly liable to the plaintiff on the indorsement."

In Brown v. Robbins, supra, it is said:

"We think, on this evidence, the plaintiff had a right to recover. It appears by the evidence that, at the time of the assignment, the defendant did not think the maker of the note able to pay it, and did not wish that strict legal diligence should be used by the plaintiff to collect the note from the maker. The defendant told the plaintiff, at the time of the assignment, that the maker was an honest man; that he was under the weather, and to wait awhile and he would get his money."

We have reached the conclusion that from the simple, clear, and undisputed facts of this case no other judgment than the one rendered by the trial court could have been rendered, and it follows that we do not think that the court erred in instructing the jury to find for appellee against appellant, and therefore we overrule assignments three and four.

[8] By appellant's fifth assignment it is insisted that the court erred in sustaining plaintiff's special exception to so much of appellant's first amended answer as alleges that it was the understanding between him and those acting for his transferee that his indorsement was to be without recourse on him, and that he was ignorant of the legal effect of his signing his name on the back of the note transferred, and that he was told by those representing the transferee that his signing his name on the back of said notes was only a formal matter, and was necessary to make a proper transfer, and that, relying on such representations, he so signed his name, believing that he was transferring said notes without recourse on himself. In Wizig v. Beisert, 120 S. W. 954, it was held that the statement of an attorney for the indorsee of a note that the indorser of a note would not be bound thereby is only the expression of an opinion as to the legal effect of the indorsement, and not the mistatement of a fact entitling the indorser to avoid liability of his obligation, on the grounds of fraudulent representations; that a verbal agreement between the indorser and indorsee of a note that the former will not be bound by his indorsement is no defense to an action thereon, for the reason that evidence thereof cannot be offered to defeat the action. This proposition is also supported by the cases of Cresap v. Manor, 63 Tex. 485–488, and Dwiggins v. Merchants' National Bank, 27 S. W. 171. The fifth assignment is overruled.

As we find no error in the trial of this cause, the judgment rendered in the trial court is affirmed.

Affirmed.

On Motion for Rehearing.

In the original opinion filed in this court on the 9th day of May, 1916, we stated:

"That as appellant was the owner of the notes in question long after they became due, and although he had an opportunity to do so, he had brought no suit to collect the sum due on the notes, the transferee of the same was not required to exercise that degree of diligence in fixing the liability of the indorser which he would have been required to exercise if said notes had been transferred to him before maturity, but should be required to exercise such reasonable diligence only as was apparently necessary, under all the facts and circumstances of the case, to protect the indorser from loss by delay in bringing suit, and that appellee did exercise such diligence"

—and in support of such statement we quoted with approval a portion of the opinion in the case of Chadwick v. Jeffers, 1 Rich. Law (S. C.) 397, 44 Am. Dec. 260. Upon further consideration, on motion for rehearing, we have concluded that such statement, and the rule quoted from Chadwick v. Jeffers, supra, is not the law of this state as made by our statutes or by the decisions of our courts. We therefore recede from such holding.

But as we still think the judgment of the trial court was properly affirmed for the other reasons given in our opinion, the motion for rehearing is overruled.